**UNITED STATES OF AMERICA
DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

**VILEIKA SOTO-NUNEZ**

**V.**

**IN RE: $75,980 IN U.S. CURRENCY**

**CASE NO. 21-MC-91755**

## RULE 41(g) MOTION FOR RETURN OF PROPERTY

Now comes Claimant Vileika Soto-Nunez and, pursuant to Fed.R.Crim.P. 41(g), moves this Honorable Court to order the U.S. Drug Enforcement Administration [DEA] to return $75,980 in U.S. currency seized from Vileika Soto-Nunez on June 8, 2021.

On June 8, 2021 DEA Task Force Agent [TFA] Jaime Cepero[1] and Boston Police Detective John Ricard took from Ms. Vileika Soto-Nunez a bag which contained $75,980.00 in U.S. Currency.  Ms. Soto-Nunez was neither arrested nor charged with any crime.  Instead, the DEA used civil forfeiture laws to seize the currency.  The DEA continues to hold the money without filing a complaint to forfeit the currency or charging Ms. Soto-Nunez with any crime, in violation of the Civil Asset Forfeiture Reform Act of 2000 [CAFRA].

---

[1] TFA Cepero is a Massachusetts State Police Trooper.

That law requires the government to return seized property, initiate civil forfeiture proceedings, or initiate criminal proceedings within 90 days of the date on which the seizing agency receives a claim and demand for federal court proceedings. 18 U.S.C. § 983(a)(3)(A) and (B).

In this case, the DEA's deadline expired on or about December 6, 2021, without the government doing any of those things. Because the government missed the 90-day deadline, CAFRA prohibits any further litigation over the currency — in civil or criminal proceedings — and both CAFRA and Attorney General regulations require the government to "promptly" return the currency. Id.; see also 28 C.F.R. § 8.13(b). This Court should order that remedy without delay, for the reasons set forth below.

## MEMORANDUM OF LAW

Ms. Vileika Soto-Nunez hereby moves this Court for an order under Federal Rule of Criminal Procedure 41(g) directing the DEA to return $75,980 in U.S. currency that was seized from Ms. Soto-Nunez by TFA Cepero and Boston Police Detective Ricard on June 8, 2021.

**I. FACTS AND PROCEDURAL HISTORY**

On June 8, 2021 Ms. Soto-Nunez had in her possession a bag which contained $75,980 in U.S. Currency. The money had been entrusted with Ms. Soto-Nunez for safe keeping by the

2

owner of the money. While Ms. Soto-Nunez was transporting the currency she was stopped by TFA Cepero and Det. Ricard. The bag with the currency was taken from Ms. Soto-Nunez by TFA Cepero and Det. Ricard. Ms. Soto-Nunez was given a receipt signed by Det. Ricard and TFA Cepero. (Ex. 1)

Ms. Soto-Nunez later received a formal notice from the DEA, a Notice of Seizure and Initiation of Administrative Forfeiture Proceedings, dated August 5, 2021. (Ex. 2) Following the instructions on the notice, Ms. Soto-Nunez, with the assistance of counsel, promptly mailed to the DEA a claim to the money on September 3, 2021. (Ex. 3 [cover letter] and Ex. 4 [Claim]) The Postal Service's return receipt confirmed that the claim was received on September 7, 2021. (Ex. 5)

Ms. Soto-Nunez's claim, signed under the pains and penalties of perjury, stated that the currency had been given to her to hold and keep safe by the owner of the currency. In the claim sent to the DEA by Ms. Soto-Nunez, she additionally demanded the return of the currency and the right to contest any attempt to forfeit the currency in the United States District Court. Ms. Soto-Nunez also contended that the currency should be returned because it was seized during an illegal search.

To the best of Ms. Soto-Nunez's knowledge, as of

September 6, 2021 (90 days after the DEA's receipt of Ms. Soto-Nunez's claim and demand), a civil claim seeking forfeiture of the seized money had not been filed by the United States Attorney.  On December 9, 2021, Ms. Soto-Nunez's attorney sent a letter to the DEA Forfeiture Counsel, with a copy to the District of Massachusetts U.S. Attorney's Forfeiture Unit.[2]  (Ex. 6)  In the letter counsel for Soto-Nunez respectfully requested the return of the money.  Counsel further explained that Ms. Soto-Nunez had filed a valid and timely claim and that in violation of 18 U.S.C. §983(a)(3)(A), the currency had not been returned nor had a forfeiture complaint been filed.  Counsel requested that he be contacted in order to arrange the return of the seized currency.  Neither the DEA nor the U.S. Attorney responded to counsel's December 9, letter.

**II. ARGUMENT**

CAFRA sets a strict 90-day deadline on the government to pursue a forfeiture complaint or criminal proceedings after receiving a claim to property.  See 18 U.S.C. §983(a)(3)(A) and (B).  If the government fails to comply with that deadline, it must promptly return the property and

---

[2] When Counsel called the U.S. Attorney's Office he was told that it was their policy not to identify the head of the Forfeiture Division.  An envelope addressed to "Forfeitures" would be forwarded to the appropriate person.

is forbidden from seeking to forfeit the property in the future. §983(a)(3)(B). The government here blew through its 90-day deadline, which expired no later than September 6, 2021, and it is thus required to, among other things, return the seized currency.

Longstanding precedent makes clear that a motion under Federal Rule of Criminal Procedure 41(g) is the appropriate mechanism for somebody in Ms. Soto-Nunez's position to secure the return of the currency after the limitations period has expired for the government to pursue forfeiture of property it has seized. The Court should grant the motion and order the government to promptly return the money to Ms. Soto-Nunez.

> **A.   The Government Violated the Deadlines Set by CAFRA and Is Therefore Obligated to Return the Money.**

With the CAFRA, Congress enacted several reforms intended to prevent abuse of the nation's forfeiture laws. Among the most important of these reforms was establishing strict, mandatory deadlines for the government to initiate forfeiture cases. See 18 U.S.C. §983(a).

Under CAFRA, the government has 60 days after seizing property to send written notice to interested parties. §983(a)(1)(A). Once that formal notice is sent, property owners have a limited time in which to file a claim

identifying the specific property they are claiming and stating their legal interest in the property. §983(a)(2). The government then has 90 days from the date the claim is received by the seizing agency to return the property, file a civil forfeiture complaint, or obtain a criminal indictment that includes an allegation that the property is subject to forfeiture. §983(a)(3)(A) and (B).

The 90-day deadline "was considered by the sponsors of CAFRA to be one of its most important reforms." Stefan D. Cassella, Asset Forfeiture Law in the United States § 7-4(a) (2d ed. 2013) (citing H.R. Rep. No. 106-192 (1999)). Congress was crystal clear about the consequences of missing the deadline: [1] the Government shall promptly release the property pursuant to regulations promulgated by the Attorney General, and [2] may not take any further action to effect the civil forfeiture of such property in connection with the underlying offense. 18 U.S.C. §983(a)(3)(B). Under the first of these provisions, once the 90-day deadline has elapsed, the Attorney General requires that a seizing agency shall promptly notify the person with a right to immediate possession of the property, informing that person to contact the property custodian within a specified period for release of the property. 28 C.F.R. § 8.13(b). Under the second provision, the expiration of the deadline means that the

civil forfeiture of the property is forever barred. <u>United States v. Real Property Located at 475 Martin Lane</u>, 545 F.3d 1134, 1141 (9th Cir. 2008); see also <u>United States v. Marolf</u>, 173 F.3d 1213, 1217 (9th Cir. 1999) (explaining that because "civil forfeiture statutes . . . impose quasi-criminal penalties without affording property owners all of the procedural protections afforded criminal defendants," forfeitures should be enforced only when within both letter and spirit of the law).

In this case, the government did not comply with CAFRA's 90-day deadline. Ms. Soto-Nunez received a DEA notice of seizure dated August 5, 2021. She promptly sent the DEA a verified claim to the money on September 3, 2021 (which was received on September 7, 2021). This was within the time allotted to Ms. Soto-Nunez to file a claim. <u>See</u> 8 U.S.C. § 983(a)(2)(B) (requiring a claim to be filed "not later than the deadline set forth in a personal notice letter"). Given that the DEA received Soto-Nunez's claim on September 7, the government's 90-day deadline to file a forfeiture complaint or return the money expired no later than September 6, 2021. <u>See</u> 18 U.S.C. §983(a)(3)(A). As of the filing of this Rule 41 Motion, the government has done neither.

Nor did the government do any of the things that CAFRA

requires a seizing agency to do to extend the deadline. It did not "obtain a criminal indictment containing an allegation that the property is subject to forfeiture." §983(a)(3)(B)(ii)(I). It did not "take the steps necessary to preserve its right to maintain custody of the property as provided in the applicable criminal forfeiture statute." §983(a)(3)(B)(ii)(II). It did not return the money to Ms. Soto-Nunez "pending the filing of a complaint." §983(a)(3)(A). It did not obtain an extension by "agreement of the parties." Id. Nor, to the best of Soto-Nunez's knowledge, did the government move this Court to extend the 90 days period for filing a complaint for good cause shown. Id. Now that the 90-day window has closed, the government cannot do any of these things. §983(a)(3)(A)-(B).

The remedy for the government's failure to commence federal court proceedings is plainly spelled out in CAFRA: "[T]he Government shall promptly release the property." §983(a)(3)(B). Accordingly, this motion should be granted without delay.

### B. Ms. Soto-Nunez Established Herself as a Valid Claimant.

On October 6, 2021, the DEA sent Ms. Soto-Nunez's attorney a letter acknowledging that it had received Ms. Nunez's claim but maintained that the claim was defective. (Ex. 7) The DEA wrote that the "submission did not state

8

claimant's interest in the property."[3]

Ms. Soto-Nunez's claim was sufficient to establish her as a valid claimant. United States v. $515,060.42 in U.S. Currency, 152 F.3d 491 (6th Cir. 1998) and 18 U.S.C. §983(a)(2)(C)(ii).  In a governmental forfeiture action, a claim must (1) identify the specific property being claimed; (2) Identify the claimant and state the claimant's interest in the property; and (3) Be made under oath by the claimant, not counsel for the claimant, and recite that it is made under penalty of perjury.  28 C.F.R., §8.10(b)

Naked possession claims are insufficient to establish standing.  See United States v. $191,910.00 in U.S. Currency, 16 F.3d 1051, 1058 (9th Cir. 1994).  The assertion of simple physical possession of property as a basis for standing must be accompanied by factual allegations regarding how the claimant came to possess the property, the nature of the claimant's relationship to the property and/or the story behind the claimant's control of the property. See United States v. 526 Liscum Dr., 866 F.2d 213, 216 (6th

---

[3] The DEA was mistaken that Ms. Soto-Nunez's claim did not state her interest in the property.  Neither CAFRA nor the Code of Federal Regulations contain provisions requiring a response to the October 6 letter.  The letter, unless it accurately identified a defect to the claim (see 28 CFR §8.10(g)), could not effect the 90 days provided by 18 U.S.C., §983(a)(3)(A) to file a civil forfeiture complaint.

Cir. 1989) and United States v. $321,470.00 U.S. Currency, 874 F.2d 298, 303-304 (5th Cir. 1989).

In order to sufficiently establish one's status as a claimant, a person must have a colorable ownership, possessory or security interest in at least a portion of the defendant property.  See United States v. 16510 Ashton, 47 F.3d 1465, 1470 (6th Cir. 1995).  Colorable claims which confer standing may include property interest less than ownership.  United States v. Currency Totaling $48,318.08, 609 F.2d 210, 214 (5th Cir. 1980) (valid assignee has standing to challenge forfeiture).  A bailee with a possessory interest in bailed currency has sufficient standing to establish claimant status.  United States v. $122,043.00 in U.S. Currency, 792 F.2d 1470, 1473 (9th Cir. 1986).  An individual who asserts that he is a bailee of the seized funds is a valid claimant.  See United States v. U.S. Currency in Sum $185,000, 455 F.Supp.2d 145 (E.D. N.Y. 2006) citing Mercado v. U.S. Customs Serv., 873 F.2d 641, 645 (2d Cir.1989).

Ms. Soto-Nunez was in possession of the bag which contained $75,980.00 in U.S. Currency when, on June 8, 2021, the bag was seized by TFA Cepero and Det. Ricard. Additionally, in her claim sent to the DEA's Asset Forfeiture Section, Ms. Soto-Nunez stated that the currency

had been given to Ms. Soto-Nunez by the owner of the currency to hold and keep safe.  Accordingly, Ms. Soto-Nunez claim is sufficient to establish her as a claimant.  She was a valid bailee in possession of the property.

        **C.    A Motion under Rule 41(g) Is the Appropriate Means to Compel the Government to Return Lara's Money.**

A motion under Federal Rule of Criminal Procedure 41(g) is the appropriate means for seeking return of property when the government fails to commence a forfeiture proceeding in a timely manner.  The rule provides that a "person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return." Fed.R.Crim.P. 41(g).  Such a motion "must be filed in the district where the property was seized." Id.  Additionally, "[t]he court must receive evidence on any factual issue necessary to decide the motion." Id.  Courts have held that Rule 41(g) gives property owners an equitable remedy when the government fails to initiate civil forfeiture proceedings. United States v. $8,850, 461 U.S. 555, 569 (1983) (an individual can take various steps to secure the return of property, including filing an equitable action for return of the seized property and filing a motion for return of property under Federal Rule of Criminal Procedure 41(g)); see Manuel Pérez-Colón v. Alex Camacho, et al., 73 F. App'x

474 (1st Cir. 2003); and e.g., Omidiv. United States, 851 F.3d 859, 862-63 (9th Cir. 2017) (explaining that Rule 41(g) is an appropriate vehicle to seek return of property when no criminal case has been filed); United States v. Ibrahim, 522 F.3d 1003, 1007 (9th Cir. 2008) (explaining a Rule 41(g) motion is a proper vehicle to challenge an invalid forfeiture); see also United States v. Sims, 376 F.3d 705, 708 (7th Cir. 2004) ("The proper office of a Rule 41(g) motion is, before any forfeiture proceedings have been initiated, or before any criminal charges have been filed, to seek the return of property . . . held an unreasonable length of time without the institution of proceedings that would justify the seizure and retention of the property."); Cassella, Asset Forfeiture Law in the United States §3-11(c) (collecting cases holding that "Rule 41(g) is the appropriate vehicle for seeking the return of property never forfeited"). What was then Rule 41(e) "was changed to Rule 41(g) in 2002"; the two versions are substantively identical, and the rule was "amended for stylistic purposes only." United States v. Kaczynski, 416 F.3d 971, 973 n.3 (9th Cir. 2005).

In Rule 41(g) cases brought outside a criminal proceeding, such as here, the motion is "treated . . . as a civil complaint governed by the Federal Rules of Civil

Procedure." Ibrahim, 522 F.3d at 1007. "[T]he motion is treated as a petition for civil equitable relief." Omidi, 851 F.3d at 863 (citing United States v. Comprehensive Drug Testing, Inc., 621 F.3d 1162, 1172–74 (9th Cir. 2010) (en banc) (per curiam)); accord United States v. Martinson, 809 F.2d 1364, 1366–67 (9th Cir. 1987).

In this case, the limitations period has expired, and therefore the government cannot initiate forfeiture proceedings. As a result, Ms. Soto-Nunez has no means of seeking the return of the currency other than Rule 41(g). She cannot win the money back in forfeiture proceedings that will never commence. This motion is therefore the most appropriate vehicle to receive judicial relief for the government's continued seizure of the currency past the expiration of the CAFRA limitations period.

### D. The Court Should Order the DEA to Return the Currency Without Conditions.

Finally, Rule 41(g) provides that "[i]f it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings." Fed.R.Crim.P. 41(g). This provision applies in cases where the movant is asking for the return of seized property that may be relevant to ongoing proceedings — for example, if that property may be used as evidence or subject to

forfeiture. In such cases, a court may place conditions on the return of the property, such as requiring the movant retain possession of it, to ensure that the property is available should it become needed in the later proceedings. In this case, however, there will be no "later proceedings." As explained, the government is time-barred from any "later proceedings," there is no legitimate basis for giving the government "access" to or "use" of the money. Just the opposite: By its own actions, the government has forfeited any legal entitlement that it may ever have had to the money. Indeed, the law affirmatively requires DEA to return Soto-Nunez's money promptly now that the 90-day deadline has elapsed. Accordingly, the Court should order the return of the money without any conditions.

### III. CONCLUSION

The Court should grant Soto-Nunez's motion and order the government to return all $75,980 in United States currency.[4]

---

[4] Should this Court deny Ms. Soto-Nunez's request, pursuant to 18 U.S.C., §983(a)(3)(A), she seeks leave to supplement this motion with a request to suppress the seizure pursuant to F.R.Crim.P. 41(h) and move for the return of the money because it was illegally seized. See One 1958 Plymouth Sedan v. Pennsylvania, 380 U.S. 693, 696 (1965); United States v. $191,910 in U.S. Currency, 16 F.3d 1051, 1063 (9th Cir. 1994) superseded in part by statute, Civil Asset Forfeiture Reform Act of 2000, Pub. L. No. 106-185, 114 Stat. 202. (holding that the Fourth Amendment

                                                  **Respectfully Submitted**
**VILEIKA SOTO-NUNEZ**
**By her Attorney:**

/s/ Thomas Kerner
_____
**THOMAS KERNER**
**MA BBO # 552373**
**Attorney at law**
**343 Commercial Street**
**Boston, MA 02109**
**(617) 720-5509**
**thomas.kerner@comcast.net**

---

exclusionary rule is applied to forfeiture actions based on the precedent established in <u>Plymouth</u>).